IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

EDWARD JOSEPH BAKER,           :
    Petitioner,               :
                              :
                              :    CIVIL ACT. NO.: 17-00430-WS-C
vs.                            :    CRIMINAL NO. 15-00212-WS-N
                              :
UNITED STATES OF AMERICA,      :
    Respondent.               :
                              :

REPORT AND RECOMMENDATION

Edward Joseph Baker ("Baker" or "Petitioner"), a federal prisoner proceeding *pro se*, has filed a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. 37)[1]. The Court has referred the petition to the undersigned Magistrate Judge who, under S.D. Ala. GenLR 72(a)(1) and (2)(R), is authorized to require responses, issue orders to show cause and any other orders necessary to develop a complete record, and to prepare a report and recommendation to the District Judge as to appropriate disposition of these proceedings brought under 28 U.S.C. § 2255, in accordance with 28 U.S.C. § 636(b)(1) and Rules 8(b) and 10 of the Rules Governing Section 2255 Proceedings for the United States District Courts. *See* S.D. Ala. GenLR 72(b).

The United States has timely filed a response (Doc. 39) in opposition to Baker's § 2255 motion, to which Baker has not responded. The motion is now under submission for determination of whether expansion of the record and/or an evidentiary hearing is warranted. *See* Rules 7 and 8(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts.

---

[1] All "Doc." citations herein refer to the docket of the above-styled criminal action.

Having reviewed the parties' submissions in accordance with Rule 8(a) of the Rules Governing Section 2255 Proceedings, the undersigned finds that neither expansion of the record nor an evidentiary hearing is warranted and **RECOMMENDS** that Baker's § 2255 motion is due to be **DENIED** and **DISMISSED** with prejudice.

## I.      Background.

On December 7, 2015, Baker entered counseled guilty pleas to conspiracy to possess with intent to distribute approximately 3.2 pounds of methamphetamine ICE, in violation of 21 U.S.C. § 846, as charged in Count 1 of the Indictment, and possession of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c), as charge in Count 3 of the Indictment.  (*Compare* Doc. 22 *with* Doc. 1).   Baker was sentenced to a total term of imprisonment of 180 months, which was the statutory minimum sentence provided by the guideline calculations and specified in the Plea Agreement.  (*See* Docs. 22, 32).   For the § 924(c) count, Baker received a 60-month consecutive sentence to the 120-month term imposed with respect to the conspiracy to possess with intent to distribute count.  (*See* Doc. 32).  Baker did not file a direct appeal.[2]

In his motion to vacate, Baker asserts two claims that the statutes underlying his convictions are unconstitutional, one claim that the court lacked jurisdiction over his prosecution because his offense did not occur on federal land, and a final claim of ineffective assistance of counsel which includes multiple accusations.  (Doc. 39).

## II.      General Standards in § 2255 Proceedings.

---

[2]     Baker did file a Motion for Reduction of Sentence pursuant to 18 U.S.C. § 3582(c)(2) (2014 Drug Guidelines Amendment).  (Doc. 34).  The Court determined that Baker was sentenced after the Drug Guidelines were amended on November 1, 2014, and Baker, therefore, was not eligible for a reduction in sentence because he already received the applicable reduction.  (Doc. 36).

Title 28 U.S.C. § 2255 "permits a federal prisoner to bring a collateral challenge by moving the sentencing court to vacate, set aside, or correct the sentence." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1215-16 (11th Cir. 2014). Specifically, § 2255 provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence ... If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

28 U.S.C. § 2255(a)-(b).

"Once the defendant's chance to appeal has been waived or exhausted," a court is "entitled to presume he stands fairly and finally convicted, especially when, as here, he already has had a fair opportunity to present his federal claims to a federal forum." *United States v. Frady*, 456 U.S. 152, 164, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982). "[A] collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (per curiam) (citing *Frady*, 456 U.S. at 165 (collecting cases)). "Because collateral review is not a substitute for a direct appeal, the general rules have developed that: (1) a defendant must assert all available claims on direct appeal, and (2) relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Id.* at 1232 (internal citations, quotations, and footnote omitted).

Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding. *McCoy v. United States*, 266 F.3d 1245, 1258 (11th Cir. 2001); *Jones v. United States*, 153 F.3d 1305, 1307 (11th Cir. 1998); *Mills[ v. United States]*, 36 F.3d [1052,] 1055[ (11th Cir. 1994)]; *Greene v. United States*, 880 F.2d 1299, 1305 (11th Cir. 1989). This rule generally applies to all claims, including constitutional claims. *See Reed v. Farley*, 512 U.S. 339, 354, 114 S. Ct. 2291, 2300, 129 L. Ed. 2d 277 (1994) ("Where the petitioner—whether a state or federal prisoner—failed properly to raise his claim on direct review, the writ is available only if the petitioner establishes cause for the waiver and shows actual prejudice resulting from the alleged violation." (internal quotation marks, punctuation, and citations omitted)); *see also Wainwright v. Sykes*, 433 U.S. 72, 84, 97 S. Ct. 2497, 2505, 53 L. Ed. 2d 594 (1977) (applying cause and prejudice standard to constitutional claims).

A defendant can avoid a procedural bar only by establishing one of the two exceptions to the procedural default rule. Under the first exception, a defendant must show cause for not raising the claim of error on direct appeal *and* actual prejudice from the alleged error. *Bousley v. United States*, 523 U.S. 614, 622, 118 S. Ct. 1604, 1611, 140 L. Ed. 2d 828 (1998); *Mills*, 36 F.3d at 1055; *Cross v. United States*, 893 F.2d 1287, 1289 (11th Cir. 1990); *Greene*, 880 F.2d at 1305; *Martorana v. United States*, 873 F.2d 283, 284 (11th Cir. 1989); *Parks v. United States*, 832 F.2d 1244, 1246 (11th Cir. 1987). Under the second exception, a court may allow a defendant to proceed with a § 2255 motion despite his failure to show cause for procedural default if "'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Mills*, 36 F.3d at 1055 (quoting *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2639, 2649, 91 L. Ed. 2d 397 (1986)); *see also Bousley*, 523 U.S. at 622, 118 S. Ct. at 1611; *Jones*, 153 F.3d at 1307.

*Id.* at 234-35 (footnote omitted).

Once a petitioner files a § 2255 motion, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall ... grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." [28 U.S.C.] § 2255(b). A petitioner is entitled to an evidentiary hearing if he "alleges facts that, if true, would entitle him to relief." *Aron[ v. United States]*, 291 F.3d [708,] 715[ (11th Cir. 2002)] (quoting *Holmes v. United States*, 876 F.2d 1545, 1552 (11th Cir. 1989). "[A] petitioner need only *allege*—not prove—reasonably specific, non-conclusory facts that, if true, would entitle him to relief." *Id.* at 715 n.6. However, a district court need not hold a hearing if the allegations are "patently frivolous," "based upon unsupported generalizations," or "affirmatively contradicted by the record." *Holmes*, 876 F.2d at 1553 (quoting *United States v. Guerra*, 588 F.2d 519, 520-21 (5th Cir. 1979)); *see, e.g., Lynn v. United States*, 365 F.3d 1225, 1239 (11th Cir. 2004) ("Because the ... affidavits submitted by Lynn amount to

> nothing more than mere conclusory allegations, the district court was not required to hold an evidentiary hearing on the issues and correctly denied Lynn's § 2255 motion.").

*Winthrop-Redin*, 767 F.3d at 1216 (footnote omitted). *Accord, e.g., Diveroli v. United States*, 803 F.3d 1258, 1263 (11th Cir. 2015).

## III. Analysis.

### a. Titles 18 and 21 of the United States Code are Nonpositive Law.

In Ground One of his petition, Baker asserts that the statutes under which he was convicted are nonpositive law and unconstitutional because "both Houses were in mutual adjournment" on June 25, 1948 and, thus, "could not have duly enacted" Title 18 and Tile 21 of the United States Code. (Doc. 37 at 4). This claim is both procedurally barred and meritless.

As argued by the Government, "[a] prisoner who fails to raise an issue on direct appeal is procedurally barred from raising that claim in a § 2255 motion, absent a showing of cause and prejudice or a fundamental miscarriage of justice." *King v. United States*, 419 F. App'x 927, 927 (11th Cir. 2011) (citing *Jones v. United States*, 153 F.3d 1305, 1307 (11th Cir. 1998)). Baker does not offer any reason or cause for his failure to raise this claim on direct appeal nor can he show prejudice or a miscarriage of justice by the procedural bar. Accordingly, Baker is procedurally barred from collaterally attacking his sentence.

Additionally, the claim is meritless. The argument that provisions of Titles 18 and 21 of the United States Code were not validly enacted by Congress has been rejected by numerous courts. The Act of June 25, 1948, Pub. L. No. 80-722, 62 Stat. 683 was codified at 18 U.S.C. § 924, and the Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub. L. No. 91-513, Tit. II, §§ 401, 406, 84 Stat. 1260, 1265 was codified at 21 U.S.C.

§§ 841 and 846.  In *United States v. Levy*, 849 F. Supp. 2d 1353 (S.D. Fla. 2012)[3] our sister court considered and rejected the same basic argument, that Title 18 of the United States Code is unconstitutional, based on the "enrolled bill rule".  Under the "enrolled-bill rule", courts are precluded from looking beyond the signatures to determine the validity of a statute.  *See Marshall field & Co. v. Clark*, 143 U.S. 649, 672, 12 S. Ct. 495, 36 L. Ed. 294 (1892) ("It is admitted that an enrolled act, thus authenticated, is sufficient evidence of itself -- nothing to the contrary appearing upon its face -- that it passed Congress.").  Accordingly, a legislative document that is authenticated in its regular form by the appropriate officials is considered properly adopted.  *United States v. Farmer*, 583 F.3d 131, 151-52 (2d Cir. 2009).  The *Levy* court also examined the legislative record behind the bill that became Title 18 and found it properly passed:

> . . . contrary to any contention that Public Law 80-772 was signed without the proper authority of Congress, the House Journal indicates that the Speaker of the House and the President pro tempore of the Senate were authorized to sign enrolled bills after the congressional adjournment pursuant to House Concurrent Resolution 219.  *See* H. JOURNAL 80th Cong., 2d Sess. 771 (1948) ("*Resolved*, That notwithstanding the adjournment of the two Houses until December 31, 1948, the Speaker of the House of Representatives and the President pro tempore of the Senate be, and they are hereby, authorized to sign enrolled bills and joint resolutions duly passed by the two Houses and found truly enrolled.").  *See also* S. JOURNAL, 80th Cong., 2d Sess. 578-79 (1948) (stating that the President pro tempore of the Senate, pursuant to the authority of House Concurrent Resolution 219, signed H.R. 3190 after the adjournment of the Senate on June 20, 1948).  In sum, § 3231 is valid.  *See Wolford v. United States*, 362 Fed. Appx. 231, 232 (3d Cir.2010) ("Section 3231 was properly enacted and is binding. The 1948 amendment to that statute, Public Law 80-772, passed both houses of Congress and was signed into law by President Truman[.]").

849 F. Supp. 2d 1353, 1356-57.  *Levy* further noted that federal courts in various jurisdictions all rejected similar claims.[4]

---

[3]    "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

[4]    *Levy* cites to the following cases in support of the validity of Title 18:

"To enact a statute into positive law, Congress must specifically approve the language of the codification." *Goldsby v. United States*, 152 F. App'x 431, 440 (6th Cir. 2005) (internal quotation and citation omitted). This is done by the Office of the Revision Counsel submitting each individual title of the Code to Congress to be enacted. *Id.* Notably, "as of 1998, less than half the titles in the Code had been enacted into positive law." *Id.* Courts have routinely held that "Congress's failure to approve the specific placement of Title 21 does not affect the validity of the underlying legislation." *Id.*; *see also Beriguete v. United States*, No. 09-23043-Civ COOKE, 2010 U.S. Dist. LEXIS 144112, *25-26 (S.D. Fla. Sept. 24, 2010) (upholding Title 21 as valid law and citing to *United States v. Skurdal*, 1993 U.S. App. LEXIS 11957, 1993 WL 164651, *1 (9th Cir. 1993) (Upheld convictions under 18 U.S.C. §§ 841 and 846 and 18 U.S.C. § 2 despite Congress's failure to enact the title into positive law, specifically finding "Congress's failure to enact a title into

---

*United States v. Campbell*, 221 Fed. App'x. 459, 461 (7th Cir. 2007) (rejecting argument that § 3231 is void because the House and Senate did not vote on it during the same session of Congress); *United States v. Collins*, 510 F.3d 697, 698 (7th Cir. 2007) (describing attack on constitutionality of the enaction of Title 18 as "unbelievably frivolous"); *United States v. Potts*, 251 Fed. App'x. 109, 111 (3d Cir. 2007) (denying motion to void a criminal judgment and holding that the defendant's contention that the 1948 amendment to § 3231 was not passed by both houses of Congress was "frivolous"); *Rhodes v. United States*, No. 4:06-CR-00218, 2011 U.S. Dist. LEXIS 75269, 2011 WL 2693571, at *1 (E.D. Ark. Jul. 12, 2011) (rejecting claim that a quorum was not present when the House voted on Public Law 80-772); *Turner v. United States*, No. 11-0327-WS-C, 2011 U.S. Dist. LEXIS 135531, 2011 WL 5595939, at *5-6 (S.D. Ala. Sep. 8, 2011) (denying challenge to the jurisdiction of the court on the ground that the House vote on Public Law 80-772 was taken without a quorum); *United States v. Felipe*, No. 07-CV-061, 2007 U.S. Dist. LEXIS 54834, 2007 WL 2207804, at *2 (E.D. Pa. Jul. 30, 2007) (rejecting argument that there was a *sine die* recess in Congress between the House vote on Public Law 80-772 and its adoption by the Senate in violation of the Constitution).

849 F. Supp. 2d at 1357.

positive law has only evidentiary significance and does not render the underlying enactment invalid or unenforceable.")); *Wilson v. United States*, 1991 U.S. App. LEXIS 26092, 1991 WL 216477, *1 (10th Cir. 1991)(the fact that Title 21 had not been enacted into positive law does not render the substantive law it records a nullity.).

Petitioner Baker was charged with and plead guilty to violations of 18 U.S.C. § 924(c) and 21 U.S.C. § 846. In doing so, he admitted to conspiring with others and attempting to distribute methamphetamine and the use/carry of a firearm in relation to a drug trafficking offense. Accordingly, his offenses are punishable under the statutes, which courts have determined to be valid Congressional enactments despite whether or not they or positive law. *Beriguete*, 2010 U.S. Dist. LEXIS at *26. Consequently, Baker's claim should be denied.

### b. Convicting Statutes are Unconstitutional.

In Ground Two of his petition, Baker argues that the statutes under which he was convicted are unconstitutional. Specifically, he contends that the statutes lack a nexus to interstate commerce and that the laws lack defined limits delineating federal and state jurisdictions.

This claim is a challenge to the validity of his conviction and sentence; such claims must generally be presented on direct appeal or the defendant is barred from presenting the claim in a § 2255 action. *See McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011) (citation omitted). The two exceptions to this procedural default rule do not apply in this case, as Baker has not argued or shown cause and prejudice for his failure to present this claim on direct appeal nor has he supplied evidence establishing his actual innocence. *Id.* at 1196. Because neither exception is applicable, federal review of this claim is precluded. However, even if the Court were to review Baker's claim, the claim clearly lacks merit.

Baker was convicted of violating 18 U.S.C. § 924(c) and 21 U.S.C. 846. Section 924(c) states:

> . . . any person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime - - -
>
> > (i)     be sentenced to a term of imprisonment of not less than 5 years. . .

18 U.S.C. § 924(c)(1)(A) and (i). This statute is not a free-standing statute but imposes an additional penalty for using, carrying, or possessing a firearm in furtherance of a drug trafficking crime. In Baker's case, the firearm charge is connected to a charge of conspiracy to possess with intent to distribute approximately 3.2 pounds of methamphetamine ICE, in violation of § 846, which declares:

> Any person who attempts or conspires to commit any offense defined in this title shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

21 U.S.C. § 846. (Notably, possession with intent to distribute is regulated at 21 U.S.C. § 841 and carries a minimum penalty of 10 years imprisonment.).

The nexus to interstate commerce of § 924 is, thus, an extension of the unquestionable interstate commerce connection of §§ 841 and 846 drug trafficking offenses, pursuant to the Controlled Substances Act. In passing the Controlled Substances Act, Congress made specific findings describing the impact of drug trafficking on interstate commerce, including intrastate and foreign commerce, manufacturing, local distribution, and possession. *See* 21 U.S.C. §§ 801(3)-(6). Sections 841 and 846 are statutes within the Controlled Substances Act which prohibit intrastate and interstate commerce in drugs. *See* 21 U.S.C. § 801 *et seq.* Courts have routinely held these statutes to be constitutional, §§ 841 and 846 based on the legislative history and comments, and § 924

based on its connection and ties to the predicating offense of drug trafficking (or a crime of violence). *See United States v. Palacio*, 477 F.2d 560 (5th Cir. 1973) (Section 841 is constitutional); *United States v. Brown*, 72 F.3d 96 (8th Cir. 1995) (Congress has power under the commerce clause to criminalize possession of weapons under § 924 based on drug trafficking offense pursuant to § 841); *United States v. Lerebours*, 87 F.3d 852 (1st Cir. 1996) (same); *United States v. Owens*, 996 F.2d 59, 61 (5th Cir. 1993) (§ 841 is valid exercise of Congress' commerce power). Likewise, the Eleventh Circuit has repeatedly "upheld the constitutionality of § 924(c) against Commerce Clause challenges." *See United States v. Gatlin*, 194 F. App'x 798, 802 (11th Cir. 2006) (citing *United States v. Ferreira*, 275 F.3d 1020, 1028 (11th Cir. 2001); *United States v. DePace*, 120 F.3d 233, 235 n. 2 (11th Cir. 1997)); *see also Craig v. United States*, 703 F. App'x 798, 801 (11th Cir. 2017) (explaining that § 924(c) requires a nexus between "the firearm offense and the predicate crime"); *United States v. Louisuis*, 294 F. App'x 573, 577 (11th Cir. 2008) (discovery of the firearms in close proximity to drugs provided sufficient nexus between possession of firearms and drug trafficking offense). Consequently, Baker's claim fails.

Furthermore, Baker's claim that § 841 is unconstitutional because "it has no judicially enforceable outer limit that delineates federal jurisdiction from state jurisdiction" is meritless. In enacting the Controlled Substances Act, Congress explained how "[a] large percentage of controlled substances, especially those held or manufactured for illicit sale, are unlabeled, thereby making a determination of their source of origin extremely difficult or impossible." *United States v. Lopez*, 459 F.2d 949, 953 (5th Cir. 1972). Accordingly, any "attempt to separate intrastate activities in controlled substances from those which were conducted on an interstate basis would be a futile exercise substantially interfering with its power to regulate interstate commerce in these substances; a power upon which any attempt to end or alleviate the drug abuse

problem would necessarily be based." *Id.*  Congress concluded that its "[p]ast attempts to regulate interstate commerce in controlled substances had failed because of the difficulty or impossibility of determining the substance's source of origin", *id.*; therefore, the only way to successfully control interstate commerce would be to "regulat[e] both intrastate and interstate activities." *Id.*  Moreover, federal courts clearly have original jurisdiction over offenses against the laws of the United States, as discussed *infra* in section III., c., but Congress dictated that such jurisdiction did not "take away or impair the jurisdiction of the courts of the several States under the laws thereof."  18 U.S.C. § 3231.

For these reasons, Baker's Ground Two is without merit and should be denied.

### c.  Crime Did Not Occur on Federal Land.

In Ground Three of the petition, Baker argues that the Court lacked jurisdiction to convict him of a federal charge because the criminal offenses did not occur on federal land.  Again, this argument is procedurally barred and meritless.

As previously discussed, Baker "generally must advance an available challenge to a criminal conviction or sentence on direct appeal or [he] is barred from presenting the claim in a § 2255 proceeding." *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004), *cert. denied.*, 568 U.S. 830, 133 S. Ct. 112, 184 L. Ed. 2d 52 (2012) (citations omitted).  Baker provides no cause excusing his failure to raise such a claim nor actual prejudice resulting from his failure. *McClesky v. Zant*, 499 U.S. 467, 493-94, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).  This claim is also meritless.

Congress has established power pursuant to the Constitution of the United Sates "to create, define, and punish crimes irrespective of where they are committed."  U.S. Const., Art. I, sec. 8.  In addition, 18 U.S.C. § 3231 grants United States district courts original jurisdiction, "exclusive of the courts of the States, of all offenses against the laws

of the United States." *See United States v. Deering*, 179 F.3d 592 (8th Cir. 1999), *cert. denied*, 528 U.S. 945 (1999) ([Petitioner's] argument that the district court lacked subject matter jurisdiction over him because his crime did not take place on federally-owned land and the Tenth Amendment reserves drug prosecutions such as his to the states is without merit."). The district court clearly had jurisdiction over the charged conduct in this case, as violations of 18 U.S.C. § 924 and 21 U.S.C. § 846 are offenses against the United States. *See*, *e.g.*, *United States v. Mack*, 198 F. App'x 799, 801-02 (11th Cir. 2006) (charged offenses were against the United States and the federal district court had jurisdiction over the case). Accordingly, Baker's claim should be denied.

### d. Ineffective Assistance of Counsel.

Petitioner's Baker's final claim includes multiple allegations of ineffective assistance of counsel. In Ground Four of his petition, Baker claims:

> House was searched without search warrant; defendant questioned before rights were read; defendant did not say he had guns because he knew drug dealing was dangerous and told his lawyer to challenge it; could not maintain contact with attorney; counsel never said the gun charge could be fought even though I owned the guns legally but was not using them for the crime as I was in the shower during the search; counsel stated defendant would get 1 year off for taking the rehab prior to sentencing; counsel never mentioned any mandatory minimum and told defendant he would be facing 9 to 11 years' counsel did not enter special appearance [to] challenge complaint or to challenge jurisdiction.

(Doc. 37 at 8).

Like Baker's previous grounds, these claims were not presented on direct appeal. Claims that would normally be procedurally barred due to the failure to raise them on appeal may be presented in a § 2255 motion, however, when couched as ineffective assistance of counsel claims. *See Massaro v. United States*, 538 U.S. 500, 504, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003). Moreover, ineffective assistance of counsel may constitute "cause" excusing a procedural default, *see Greene v. United States*, 880 F.2d 1299, 1305 (11th

Cir.1989), but only if the claim of ineffective assistance is meritorious. *Id.* This involves a determination of the merits of the underlying substantive claim. *See United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir.2000) (to determine whether a claim of ineffective assistance of counsel has merit, court must determine whether claims counsel failed to raise were meritorious).

In order to establish a claim of ineffective assistance of counsel, a petitioner is required to show (1) that his attorney's representation fell below "an objective standard of reasonableness" and (2) that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *see also Jones v. United States*, 478 F. App'x. 536, 539-40 (11th Cir. 2011) ("To make a successful claim of ineffective assistance of counsel, a defendant must show that: (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced his defense."). "The burden of persuasion is on a section 2255 petitioner to prove, by a preponderance of the competent evidence, both that counsel's performance was unreasonable, and that []he was prejudiced by that performance." *Demar v. United States*, 228 F. App'x. 940, 950 (11th Cir. 2007) (quotation marks, brackets and citations omitted); *see also Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir.2001) ("The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail."), *cert. denied sub nom. Johnson v. Nagle*, 535 U.S. 926, 122 S. Ct. 1295, 152 L. Ed. 2d 208 (2002).[5]

---

[5] It is proper in considering claims made by a federal prisoner under § 2255 to look for guidance from cases discussing claims raised by state prisoners under 28 U.S.C. § 2254. *See Hagins v. United States*, 267 F.3d 1202, 1205 (11th Cir. 2001) (citing *Holladay v. Haley*, 209 F.3d 1243 (11th Cir. 2000)), *cert. denied*, 537 U.S. 1022, 123 S. Ct. 545, 154 L.Ed.2d 432 (2002).

The Court of Appeals for the Eleventh Circuit has observed:

The performance prong of the ineffective assistance standard entails a deferential review of counsel's conduct. In assessing the reasonableness of counsel's performance, courts must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Thus, the Sixth Amendment does not require criminal defense attorneys to take a nothing to lose approach and raise every available nonfrivolous defense.

With respect to prejudice, courts ask whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*Means v. Secretary, Department of Corrections*, 433 F. App'x. 852, 855 (11th Cir. 2011) (internal quotation marks and citations omitted; footnote added), *cert. denied sub nom. Means v. Tucker*, 565 U.S. 1217, 132 S. Ct. 1580, 182 L. Ed. 2d 198 (2012) *see also Pair v. Cummins*, 373 F. App'x. 979, 981-82 (11th Cir. 2010).

Given the two-prong nature of the test for adjudicating ineffective-assistance-of-counsel claims, it can come as no surprise that "'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" *Johnson, supra*, 256 F.3d at 1176 (citation omitted). When applying the *Strickland* standard, it is clear that courts "are free to dispose of ineffectiveness claims on either of its two grounds." *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir.1998) (citation omitted), *cert. denied*, 527 U.S. 1008, 119 S. Ct. 2347, 144 L. Ed. 2d 243 (1999); *see also Adamson v. United States*, 288 F. App'x. 591, 594 (11th Cir. 2008) ("The defendant must satisfy both prongs of this test to show a Sixth Amendment violation; if the defendant fails to demonstrate one of these prongs sufficiently, we do not need to address the other."), *cert. denied*, 555 U.S. 1010, 129 S. Ct. 526, 172 L. Ed. 2d 385 (2008); *Butcher v. United States*, 368 F.3d 1290, 1293, 95 Fed. Appx. 1290 (11th Cir.2004) ("[O]nce a court decides that one of

the requisite showings has not been made it need not decide whether the other one has been.").

Finally, "vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim." *Rosado v. Secretary, Dep't of Corrections*, 2010 U.S. Dist. LEXIS 86439, 2010 WL 2976886, *4 (M.D. Fla. Jul. 20, 2010), citing *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir.1991). With these principles in mind, the undersigned now considers Baker's claims of alleged ineffective assistance of counsel.

All of Baker's challenges relate to counsel's alleged shortcomings prior to Baker entering his plea. In essence, Baker is arguing that the facts recited in the factual resume, which the district court concluded were sufficient to sustain his guilty plea, are inaccurate. The traditional rule is that a defendant's plea of guilty made knowingly, voluntarily, and with the benefit of competent counsel, waives all non-jurisdictional defects up to that point in the proceedings. *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S. Ct. 1602, 36 L. Ed. 2d 235 (1973) (noting that a guilty plea represents a break in the chain of events which had preceded it in the criminal process); *see also Bradbury v .Wainwright*, 658 F.2d 1083, 1087 (5th Cir. 1981), *cert. denied*, 456 U.S. 992, 102 S. Ct. 2275, 73 L. Ed. 2d 1288 (1982). A guilty plea is considered knowing and voluntary if "a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." *United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005). Voluntary guilty pleas entered with the advice of competent counsel may not be collaterally attacked. *Mabry v. Johnson*, 467 U.S. 504, 508, 104 S. Ct. 2543, 81 L. Ed. 2d 437 (1984).

The record shows that Baker executed a Guilty Plea Agreement and Factual Resume stating:

On July 17, 2015, Mobile Police Department Narcotics Officers conducted a controlled buy using a reliable confidential informant (RCI) who purchased $200 worth of suspected methamphetamine ICE from BAKER at BAKER's residence in Mobile, Alabama. The RCI advised the Officers that he/she saw more methamphetamine inside BAKER's residence. On July 29, 2015, MPD Narcotics Officers executed a state search warrant at Baker's residence.

As Officers detained and placed BAKER in handcuffs, BAKER spontaneously stated: "I'm just gonna let you know I'm not trying to do anything stupid. My two guns are right there (pointing) under the master bed." Officers read BAKER his *Miranda* rights, and BAKER stated he wanted to fully cooperate with officers and that "I'll do whatever I need to do."

When asked where the drugs were located, BAKER took the Officers to a shed in the back of his residence, pointed to a soft cooler lying in the floor, and stated, "it's in there." Inside the cooler was a small Tupperware bowl containing one bag of marijuana, one digital scale with methamphetamine and marijuana residence, along with approximately one gram of methamphetamine ICE in the bottom of the bowl. A metal grinder containing a small amount of marijuana was recovered from a small counter in the shed.

To locate the remainder of the methamphetamine ICE, BAKER directed the Officers to a blue carry bag in a small office room near the master bedroom and explained that the ICE was wrapped in a t-shirt. Inside the blue carry bag was a one gallon-sized Ziplock bag filled with a large amount of methamphetamine ICE. BAKER admitted that the illegal drugs belonged to him. BAKER further explained that the bought the 12 gauge Mossberg shotgun and the 9mm Smith and Wesson pistol from Academy Sports when he began to sell illegal drugs because he knew that it was a dangerous trade and he was afraid of being robbed or killed. BAKER stated that he needed the guns to protect himself and his family. . .

BAKER also explained that one month earlier, his source of supply for the methamphetamine ICE provided BAKER with one pound of ICE, at a cost of $10,000, which BAKER sold within a couple of weeks. BAKER further explained that on Tuesday, July 28, 2015, the source of supply provided BAKER with one kilogram (2.2 pounds) of methamphetamine ICE, at a cost of $18,500.

The seized firearms are described as follows: a Smith and Wesson 9mm semi-automatic pistol, model SD9, bearing serial number FWS9241, and a Mossberg 12 gauge shotgun, model 500, bearing serial number V0109997.

The seized drugs were tested by the DEA lab and determined to be 956.3 grams of 95% pure methamphetamine hydrochloride (ICE), and 11.7 grams of marijuana.

BAKER agrees that if that case went to trial, the United States could prove that he conspired with others to possess approximately 3.2 pounds of methamphetamine ICE, a Schedule II controlled substance, with the intent to distribute it. And, that the firearms described in the Indictment were possessed by BAKER during and in relation to the drug trafficking crime – conspiracy to possess with intent to distribute methamphetamine ICE, a Schedule II controlled substance, as described above.

(Doc. 22 at 15-17).

Baker signed the Factual Resume on December 17, 2015, agreeing not only to the facts provided above but also to the possible penalties to be imposed. (Doc. 22 at 3-4, 13, 17). The Plea Agreement clearly explained that Count One of the indictment carried a statutory mandatory penalty of 10 years to life imprisonment and Count Three carried a mandatory penalty of 5 years imprisonment to be served consecutively with any other sentence. (*Id*. at 3-4). Furthermore, the Court conducted its standard plea colloquy at the plea hearing, where Baker affirmed under oath that the factual resume was true and correct and that the government could have proven the facts contained therein at trial, acknowledged that he understood the possible penalties he faced, and that he was satisfied with the representation he received from counsel. The plea colloquy affirmation carries a strong presumption of veracity that cannot be overcome by Baker's present self-serving statements to the contrary. *Lynch v. United States*, 2017 U.S. App. LEXIS 20284, 2017 WL 4570524, at *11 (11th Cir. June 26, 2017). In the Eleventh Circuit, there is "a 'strong presumption' that statements made by the defendant during his plea colloquy are true." *United States v. Cardenas*, 230 F. App'x 933, 935 (11th Cir.2007) (citing *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir.1994)). "[T]herefore, 'when a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false.'" *Id.* (quoting *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir.1988)). Baker

has made no attempt to explain how or why his guilty plea testimony should now be deemed false. Thus, because the record affirmatively contradicts these claims, it is recommended that this claim be denied.

To the extent Baker argues his guilty plea was entered based on counsel's misinformation, Baker attacks the voluntariness of his plea. Overcoming the voluntary and intelligent character of a plea requires showing that counsel's advice was not "within the range of competence demanded of attorneys in criminal case," *McMann v Richardson*, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970), and Baker must show "that there is a reasonable probability that but for counsel's alleged errors, the defendant would not have pleaded guilty and would have insisted on going to trial." *Castro v. United States*, No. 17-CIV-21236-Moreno, 2017 U.S. Dist. LEXIS 128072, *14 (S.D. Fla. Aug. 10, 2017) (citing *Hill v. Lockhart*, 474 U.S. 52, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985)).

As to Baker's allegation that counsel never informed him that he could "fight the gun charge" (doc. 37 at 8), the record confirms (and Baker does not dispute) that two firearms were seized from his residence during his arrest. Baker does not he dispute that he is the owner of the guns. Nor does Baker dispute that the guns were found in close proximity to the seized drugs.[6] To sustain a conviction under 18 U.S.C. § 924(c)(1)(A) the government must have sufficient evidence that Baker possessed a firearm in relation to a drug trafficking crime, meaning "the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of

---

[6] According to the record, Baker was in the master bedroom shower of his residence at the time the Mobile Police Department Narcotics and Vice Unit entered and searched his home on July 17, 2015. (Doc. 23 at 4). Baker informed the officers that he possessed guns at his residence and told the officers they were under the bed in his master bedroom. (*Id.*). Baker further directed the officers to the location of the narcotics, which were found both inside the residence (in a room near the master bedroom) as well as in an outdoor shed. (*Id.*; Doc. 22 at 15-17).

accident or coincidence." *Smith v. United States*, 508 U.S. 223, 238, 113 S. Ct. 2050, 2059, 124 L. Ed. 2d 138 (1993). It is sufficient that the firearm has the potential of facilitating the drug trafficking offense. *Id.* The government need not establish that Baker had the specific intent to use the firearms in relation to the drug trafficking crime, *United States v. Coyle*, 998 F.2d 548, *cert. denied*, 510 U.S. 1095, 114 S. Ct. 928, 127 L. Ed. 2d 220 (1994) (The jury is not required to find that defendant actually intended to use or carry gun in relation to drug trafficking offense, since 18 U.S.C. § 924(c)(1) is not a specific intent crime.). Here, evidence is sufficient for a jury to conclude that Baker's possession of guns and his selling of drugs were connected. *United States v. Penniegraft*, 641 F.3d 566 (4th Cir. 2011). Thus, Baker's allegation that he never stated, "he had guns because he knew drug dealing was dangerous" is insufficient to establish deficient performance of counsel or prejudice pursuant to *Strickland*.

Additionally, Baker's claim that counsel misadvised him of the sentence that could be imposed, e.g., "Counsel never mentioned any mandatory minimum and told defendant he would face 9 to 11 years." (Doc. 37 at 8). While the Court takes these assertions as true for present purposes, Baker's claim is insufficient to establish ineffective assistance of counsel or that his claim was involuntary. Even if the Court were to assume such advice constitutes deficient performance, Baker fails to establish prejudice or assert that but for the advice he would have proceeded to trial. Furthermore, the record negates any reasonable probability that, but for counsel's alleged action in telling Baker he would receive a lesser sentence, Baker would have proceeded to trial rather than pleading guilty.

First, prior to pleading guilty, Baker was advised pursuant to the Plea Agreement of the penalty he faced for the indicted charges, including the statutory mandatory minimum sentence. According to the Plea Agreement:

The statutory mandatory minimum penalty the Court must impose on Count One of the Indictment is:

    a. 10 years to life imprisonment;

    b. A fine not to exceed $10 million;

    c. A term of supervised release of 5 years, which would follow any term of imprisonment. If the defendant violates the conditions of supervised release, he could be imprisoned for the entire term of supervised release;

    d. A mandatory special assessment of $100; and

    e. Such restitution as may be ordered by the Court.

The <u>mandatory</u> penalty the Court must impose of Count Three of the Indictment is:

    a. 5 years imprisonment consecutive to any other sentence;

    b. A fine not to exceed $250,000;

    c. A term of supervised release of 3 years, which would follow any term of imprisonment. If the defendant violates the conditions of supervised release, he could be imprisoned for the entire term of supervised release;

    d. A mandatory special assessment of $100; and

    e. Such restitution as may be ordered by the Court.

(Doc. 22 at 3-4). Baker was further advised per the Plea Agreement that the sentence would be imposed by the Court and the "no one can predict with certainty what the sentencing range will be in this case until after a pre-sentence investigation has been completed and the Court has ruled on the results of that investigation." (*Id*. at 4). Baker (and his counsel) signed the Plea Agreement on December 17, 2015.

Second, at the Plea Hearing on December 18, 2015, the United States District Judge informed Baker of the statutory minimum sentence and sentencing range he faced for the indicted charges. The district judge further informed Baker that the sentence imposed might be different from any estimate that his attorney might have given him. In open

court, prior to the Court's acceptance of his plea of guilty, Baker affirmed that he understood the possible sentence to be imposed. (Doc. 21).

Last, Baker was informed by the probation office through the presentence investigation report (doc. 23), as well as the final presentence report (doc. 25), of the same mandatory minimum sentences and never filed an objection to the recommended sentence (doc. 26). Additionally, Baker made no mention or complaint at the sentencing hearing that the imposed sentence was greater than his attorney advised him.

The petitioner's situation is thus indistinguishable from those of other defendants whose efforts to escape their sentences due to faulty advice of counsel have been rejected by the Eleventh Circuit. *See United States v. Wilson,* 245 F. App'x 10, *13-14 & n.3 (11th Cir. 2007) (petitioner was not prejudiced by counsel's misinformation concerning the possible sentencing range, since the trial court informed him of the sentencing range and sentencing contingencies and cautioned him not to rely on any estimate of counsel); *Cruz v. United States,* 188 F. App'x 908, 914 (11th Cir. 2006) (petitioner was not prejudiced by counsel's assurance that she would receive a lesser sentence, since she denied any promises to her, she was informed by the trial court that her sentence could be different than any estimate given by her lawyer, and she did not complain after receiving the PSR); *see also Long v. United States,* 883 F.2d 966, 970 (11th Cir. 1989) ("[p]erhaps the most telling fact" was the petitioner's failure to complain at sentencing that the sentence exceeded what his counsel had told him).

Because Baker cannot establish that he was prejudiced by counsel's alleged misinformation about the length of sentence to be imposed, his ineffective assistance claim fails.

### IV.    Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be denied. 18 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may only issue where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Where, as here, the district court "has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000). *See also Miller-El*, 537 U.S. at 336 ("Under the controlling standard, a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." (citations omitted and punctuation modified)).). "A prisoner seeking a COA must prove something more than the absence of frivolity or the existence of mere good faith on his or her part." *Miller-El*, 537 U.S. at 338 (quotations omitted). Upon consideration, the undersigned **RECOMMENDS** that a certificate of appealability in this action be **DENIED**. Baker has not made a substantial showing of the denial of a constitutional right, and he has presented no constitutional claim for which "reasonable jurists would find [this] court's assessment...debatable or wrong." *Slack*, 529 U.S. at 484.

## V.     Appeal *In Forma Pauperis.*

"An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith." 28 U.S.C.A. § 1915(a)(3).  A district court's finding "that an appeal would not be in good faith because no certificate of appealability had been issued . . . is not enough to explain why the appeal on the merits would not be in good faith, because the standard governing the issuance of a certificate of appealability is not the same as the standard for determining whether an appeal is in good faith. It is more demanding . . . [T]o determine that an appeal is in good faith, a court need only find that a reasonable person could suppose that the appeal has some merit." *Walker v. O'Brien*, 216 F.3d 626, 631-32 (7th Cir. 2000).  *See also Weaver v. Patterson*, Civ. A. No. 11-00152-WS-N, 2012 U.S. Dist. LEXIS 92119, 2012 WL 2568218, at *7 (S.D. Ala. June 19, 2012) (Nelson, M.J.), *report and recommendation adopted*, Civ. A. No. 11-00152-WS-N, 2012 U.S. Dist. LEXIS 92115, 2012 WL 2568093 (S.D. Ala. July 3, 2012) (Steele, C.J.) ("An appeal may not be taken *in forma pauperis* if the trial court certifies in writing that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); *see* Fed. R. App. P. 24(a)(3)(A); *Lee v. Clinton*, 209 F.3d 1025, 1026 (7th Cir. 2000) (concluding that 'good faith' is 'an objective concept' and that 'not taken in good faith' is 'a synonym for frivolous'); *DeSantis v. United Techs. Corp.*, 15 F. Supp. 2d 1285, 1288-89 (M.D. Fla. 1998) (stating that good faith 'must be judged by an objective, not a subjective, standard' and that an appellant 'demonstrates good faith when he seeks appellate review of any issue that is not frivolous').  An appeal filed *in forma pauperis* is frivolous if 'it appears that the Plaintiff has little to no chance of success,' meaning that the 'factual allegations are clearly baseless or that the legal theories are indisputably meritless.' *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993).").  *But see, e.g., United States v. McCray*, No. 4:07CR20-RH, 2012 U.S. Dist. LEXIS 48199, 2012 WL 1155471, at *2 (N.D. Fla. Apr. 5, 2012) ("Because the defendant has not obtained—and is not entitled

to—a certificate of appealability, any appeal by the defendant will not be taken in good faith. I certify under Federal Rule of Appellate Procedure 24(a) that any appeal will not be taken in good faith and that the defendant is not otherwise entitled to proceed *in forma pauperis* on appeal.").

Considering the foregoing analysis, the undersigned recommends the Court certify that any appeal by Petitioner in this action would be without merit and therefore not taken in good faith and, accordingly, find that Petitioner is not entitled to appeal *in forma pauperis*.

## VI.  Conclusion.

For the reasons set forth herein above, it is **RECOMMENDED** that Baker's § 2255 motion (Doc. 37) is due to be **DENIED** and **DISMISSED** with prejudice.

The undersigned further **RECOMMENDS** that Petitioner be found not entitled either to a Certificate of Appealability or to proceed *in forma pauperis* on appeal.

## <u>NOTICE OF RIGHT TO FILE OBJECTIONS</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1); S.D. Ala. GenLR 72(c).  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and

legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

    **DONE** this the 12th day of June 2019.

           s/**WILLIAM E. CASSADY**
          **UNITED STATES MAGISTRATE JUDGE**